UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAKIEN FIGUEROA,

    Petitioner,

— against —

UNITED STATES OF AMERICA,

    Respondent.

15-cr-495 (ARR)
20-cv-4527 (ARR)

**Not for print or electronic publication**

**Opinion & Order**

ROSS, United States District Judge:

    Petitioner, Rakien Figueroa, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. Mr. Figueroa argues that he received ineffective assistance of counsel because his trial attorney failed to call a specific witness in his defense, counter to Mr. Figueroa's express wishes. Pet'r's Mem. Law Supp. § 2255 Mot. 5 ("Pet'r's Mot."). The government opposes his motion. For the reasons set forth below, petitioner's motion is denied.

## BACKGROUND

    On October 2, 2015, Mr. Figueroa was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment 1, ECF No. 14. At trial, the government introduced testimony by four witnesses: NYPD Officers Allan Ward and Jamar Goddard, who were present at Mr. Figueroa's arrest; an evidence collection specialist who swabbed the firearm for DNA and fingerprints; and a criminalist who testified that the DNA on the firearm matched Mr. Figueroa's DNA, a match that would be expected to be found in approximately one in 114 billion people. Gov't's Opp'n Pet'r's Habeas Mot. 2–3 ("Gov't's Opp'n"), ECF No. 148; Trial Tr. 347 ("Tr."), ECF Nos. 91–94. The government also

1

introduced video surveillance footage of the encounter between Mr. Figueroa and Officers Ward and Goddard. Tr. 67.

In his testimony, Officer Ward stated that while he was on patrol with Officer Goddard, he observed Mr. Figueroa exit the driver's side of a vehicle and saw a black clip in Mr. Figueroa's waistband which appeared to be attached to a gravity knife. *Id*. at 46. He observed Mr. Figueroa reach into his waistband and place something inside the vehicle. *Id.* The officers then drove up to the vehicle and encountered Mr. Figueroa and a man they later identified as Anthony Womack standing behind the vehicle. *Id.* at 51, 57. Mr. Figueroa attempted to dissuade Officer Ward from searching the vehicle and fled when the search began. *Id.* at 53. Both officers pursued Mr. Figueroa on foot, subdued him, and handcuffed him. *Id.* When they returned to the vehicle, Mr. Figueroa shouted to Mr. Womack, "Did you get it out, did you get it out?" *Id.* at 56–57. Once Mr. Figueroa was secured in the police car, Officer Ward reached into the vehicle and recovered a firearm with a black waistband clip between the driver's seat and the center console. *Id.* at 57–58.

Mr. Figueroa was represented at trial by Susan Kellman and Sarah Kunstler. *Id*. at 1. The defense introduced one witness, Assistant District Attorney James Castle, who had drafted the initial New York State court complaint against Mr. Figueroa. *Id*. at 374–78.

The jury found Mr. Figueroa guilty of one count of being a felon in possession of a weapon. Jury Verdict (June 2, 2016). Mr. Figueroa then moved through newly appointed counsel for a new trial pursuant to Federal Rule of Criminal Procedure 33 on the grounds of ineffective assistance of counsel, claiming that Ms. Kellman should have called Mr. Womack as a witness because Mr. Womack would have testified that he, and not Mr. Figueroa, was the possessor of the gun. Decl. of Anthony Ricco, Esq. Supp. Rule 33 Mot. 3, ECF No. 102. Mr. Figueroa

asserted that Ms. Kellman had informed him that an investigator had interviewed Mr. Womack, who stated that the gun was possessed by him alone and that he wanted to testify on behalf of Mr. Figueroa. *Id.* Ms. Kellman informed Mr. Figueroa's new counsel, Anthony Ricco, that she did meet with Mr. Womack on several occasions, and he told her he wanted to testify and that he had a criminal case pending in state court for possession of the same firearm. *Id*. Ms. Kellman also told Mr. Ricco that Mr. Womack had appeared in the courthouse during Mr. Figueroa's trial "for the purpose of testifying or taking the Fifth Amendment." *Id.*

Mr. Figueroa also submitted a *pro se* letter in support of his Rule 33 motion, containing two reports by Phillip Martin, an investigator at Federal Defenders of New York. Mot. New Trial, ECF No. 105. According to the reports, Mr. Womack told the investigator that he was the one who possessed the gun, and he had forgotten to remove it from the arm rest in the vehicle. *Id.* at 3. The investigator also stated that Mr. Womack did not show up to several of their scheduled meetings and eventually admitted that he was worried that by assisting Mr. Figueroa he might be hurting himself and that "he could not help Mr. Figueroa if it meant jeopardizing his own freedom." *Id.* at 4.

I denied Mr. Figueroa's Rule 33 motion on March 21, 2017, finding that Ms. Kellman's decision not to call Mr. Womack was well within the realm of her strategic discretion. Op. & Order Denying Post-Trial Mot. 14–16 ("Op. & Order"), ECF No. 108. On February 15, 2018, I sentenced Mr. Figueroa to seventy-two months in prison for being a felon in possession of a firearm followed by three years of supervised release. Criminal Cause for Sentencing, ECF No. 127.

Mr. Figueroa raised the issue of ineffective assistance of counsel again on direct appeal to the Second Circuit. *United States v. Figueroa*, 822 F. App'x 7, 11 (2d Cir. 2020) (summary

3

order). In keeping with its usual practice, the Second Circuit declined to address this particular claim, finding that ineffective assistance of counsel claims are in many cases more appropriately brought as petitions for writ of habeas corpus so as to avoid proceeding "on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Id.* at 11–12 (quoting *Massaro v. United States*, 538 U.S. 500, 504–05 (2003)).

Mr. Figueroa now petitions for a writ of habeas corpus pursuant to 18 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence on the grounds that his trial counsel provided ineffective assistance in failing to call Mr. Womack to testify at his trial. *See* Pet'r's Mot. 6–11. He argues that his claim is distinct from the prior claim of ineffective assistance of counsel brought in his Rule 33 motion in two ways. First, in his prior motion he did not indicate that he had expressly instructed Ms. Kellman to call Mr. Womack a witness. *Id*. at 5. Second, his Rule 33 motion did not contain the sworn declaration from Womack, filed on February 15, 2018, in which he stated that Mr. Figueroa had no knowledge of the gun in the vehicle. *Id.*; Decl. of Anthony Womack ("Womack Decl."), ECF No. 126.

## DISCUSSION

Under 28 U.S.C. § 2255, federal prisoners may petition his sentencing court to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." § 2255(a). In making a claim of ineffective assistance of counsel, a petitioner must show that his attorney's representation was deficient, falling "below an objective standard of reasonableness," and that this deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). In reviewing the counsel's performance, the court must be "highly deferential" so as to avoid "the distorting effects of

4

hindsight," recognizing that "there are countless ways to provide effective assistance." *Id.* at 689.

"The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)). Even when the witness "might offer exculpatory evidence," the attorney's decision not to call that witness "is ordinarily not viewed as a lapse in professional representation." *Id.* (quoting *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)). In exceptional circumstances, such as a lawyer's "refusal even to *interview* a witness with potentially exculpatory information," the court may find that the performance was deficient. *Lopez v. Miller*, 915 F. Supp. 2d 373, 427 (E.D.N.Y. 2013) (emphasis in original).

As I found in my opinion denying Mr. Figueroa's Rule 33 motion, Ms. Kellman did interview Mr. Womack several times, and there were many plausible reasons for declining to call him to testify. Op. & Order 15–16. Mr. Womack had expressed serious reservations about testifying, given the potential consequences for his own criminal proceeding, so it would have been reasonable for Ms. Kellman to doubt whether he would actually testify, as opposed to pleading the fifth. *Id.* Even if he did testify, there would have been several obvious avenues for impeachment. First, his friendship with Mr. Figueroa, which began in childhood, would have made him susceptible to impeachment based on bias. *Id.* Second, Mr. Womack had made a prior inconsistent statement to NYPD officers denying any knowledge of the gun recovered from the vehicle. *Id.* Therefore, I did not find—and still do not find—that Ms. Kellman's decision not to call Mr. Womack fell below an objective standard of reasonableness.

Furthermore, I am unpersuaded by Mr. Figueroa's argument that because he instructed Ms. Kellman to call Mr. Womack as a witness, her refusal to do so was a violation of his Sixth

5

Amendment right to compel as opposed to a strategic decision within her discretion. Pet'r's Mot. 7. Mr. Figueroa argues that the decision to compel a particular witness should be considered a "personal" right—like the decision to plead guilty, waive a trial by jury, testify on one's own behalf, or appeal one's conviction—which cannot be overridden by the defendant's counsel. *Id*. at 7–9 (citing *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999)). Mr. Figueroa writes, "[i]f a defendant remains silent regarding what witnesses, if any, to call, then of course that decision, by default, falls under the sound discretion of the attorney. But when a defendant specifically invokes his Sixth Amendment right to call a specific witness, that choice, no matter how unwise counsel might think the choice is, must be honored." *Id*. at 9–10.

Mr. Figueroa's argument lacks support. As he concedes, there is "clear jurisprudence" defining the decision to call a witness as a strategic choice within the discretion of the attorney. *Id*. at 9. In *Gonzalez v. United States*, the Supreme Court stated that the choice of which witnesses to call depends "upon tactical considerations of the moment and the larger strategic plan for the trial" and that "the law should . . . assume" that the lawyer is better equipped than the client to make that decision. 553 U.S. 242, 249–50 (2008). The Court in *Gonzalez* declined to hold that "every instance of waiver requires the personal consent of the client" because to do so "would be impractical." *Id.* at 250.

Finally, Mr. Womack's written declaration, filed after I decided the Rule 33 motion, does not alter my analysis. *See* Womack Decl. The fact that Mr. Womack swore in writing, long after the trial ended, that Mr. Figueroa had no knowledge of the firearm does not shed any light on the quality of Ms. Kellman's performance during the trial.

Even if Ms. Kellman's performance had been deficient, Mr. Figueroa has not shown that he was prejudiced by the decision not to call Mr. Womack. In order to show prejudice, a

6

petitioner must establish that there is a "reasonable probability" that the outcome would have been different but for the counsel's error. *Strickland*, 466 U.S. at 694. In assessing the probability, the court must consider the totality of the evidence. *Id.* at 695. Mr. Figueroa argues that "it would defy credulity to suggest that Womack's testimony would not have changed the outcome of the trial" because, although Mr. Womack could have been impeached for a prior inconsistent statement, the fact that he was testifying against his own penal interest would have lent credibility to his testimony. Pet'r's Mot. 10. I disagree. Even if Mr. Womack had testified favorably for Mr. Figueroa, there is no "reasonable probability" that this testimony would have trumped the considerable weight of the evidence of Mr. Figueora's guilt—including DNA evidence linking Mr. Figueroa to the gun—submitted by the government.

## CONCLUSION

For the foregoing reasons, Mr. Figueroa's habeas petition is denied. Because he has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. However, petitioner may make such an application to the Second Circuit Court of Appeals. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:    November 4, 2020
          Brooklyn, New York

7